IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AVONTAE PAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV294 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Avontae Payne ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff received SSI benefits based on disability as a child. However, as required by law, Plaintiff's eligibility for these benefits was redetermined applying the SSI rules for adults when Plaintiff turned 18. After undertaking this redetermination, the Social Security Administration concluded that Plaintiff was no longer disabled under the applicable rules as of March 7, 2013, approximately six months after Plaintiff's eighteenth birthday. (Tr. at 13,

15, 80-83.)[1]  That decision was upheld upon reconsideration following a disability hearing by a State agency Disability Hearing Officer.  (Tr. at 13, 97-108.)  Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ").  (Tr. at 13, 113-16.)  Following the subsequent hearing on November 23, 2015, the ALJ issued a decision finding that Plaintiff's disability ended on March 7, 2013 and that she had not become disabled since that date.  (Tr. at 27-28.)  On January 25, 2017, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review.  (Tr. at 1-5.)

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, the scope of review of such a decision is "extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270

---

[1] Transcript citations refer to the Administrative Record [Doc. #8].

2

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

Because the first step of the sequential evaluation process is not used for redetermining disability at age 18, the ALJ began his analysis at step two, where he found that Plaintiff suffered from a single severe impairment: intellectual disability. (Tr. at 15.) The ALJ found at step three that this impairment failed to meet or equal a disability listing. In particular, he considered whether Plaintiff's intellectual disability met the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05 ("Listing 12.05"). (Tr. at 17-19.) The ALJ then assessed Plaintiff's RFC and determined that she could perform work at all exertional levels, but with the following mental limitations:

> [Plaintiff] can understand, remember, and carry out short and simple instructions, which is defined to mean activity that is consistent with a reasoning level of "two" or "three" as defined in the Dictionary of Occupational Titles (DOT). She can sustain attention and concentration sufficient to carry out those short and simple instructions over the course of an eight hour work day and is able to work in proximity to, but not in coordination with co-workers and supervisors. The

5

claimant is limited to low stress work, which is specifically defined to mean: no fast paced production, only simple work related decisions, few or no changes in the work setting, and only superficial contact with the public

(Tr. at 19.) At step four of the analysis, the ALJ found that Plaintiff had no past relevant work. (Tr. at 26.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy beginning March 7, 2013. (Tr. at 26-27.) Therefore, the ALJ concluded that Plaintiff was no longer disabled under the Act as of that date. (Tr. at 27-28.)

Plaintiff now challenges the ALJ's finding at step three that she failed to meet Listing 12.05, specifically as to paragraph C ("Listing 12.05C"). As provided in that Listing,

> [i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifesting during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for the disorder is met when the requirements in A, B, C, or D are satisfied.
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. In other words, a claimant must demonstrate three elements to meet Listing 12.05C: (1) deficits in adaptive functioning manifested before age 22, (2) a valid IQ score between 60 and 70, and (3) another severe impairment. See Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006).

Here, the ALJ found that the requirements of Listing 12.05C were not met because Plaintiff

does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The record reflects that the claimant did have a Full Scale IQ score of 68. . . . However, as discussed above in Section 2, [Plaintiff's] cyst, back strain, sore throat, affective disorder, anxiety disorder, and intermittent explosive disorder are not severe impairments, which do not cause any significant functional limitations. Therefore, [Plaintiff] does not have any physical or other mental impairment imposing an additional and significant work-related limitation of function.

(Tr. at 18.) Thus, the ALJ found that Plaintiff could not meet Listing 12.05C because Plaintiff did not meet the third requirement, that is, Plaintiff did not have another physical or mental impairment imposing and additional and significant work-related limitation of function.[4]

Significantly, in assessing Listing 12.05C, the regulations equate the terms "additional and significant" with "severe":

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function[.]"

---

[4] The ALJ's decision also notes that "the record indicated that [Plaintiff's] functioning improved and that her Full Scale IQ score was 71 in June 2013 with Processing Speed of 89." However, the ALJ's decision clearly reflects that Plaintiff had a qualifying IQ score of 68, and Defendant's brief clarifies that she does not challenge the validity of Plaintiff's IQ scores. As noted by Defendant, the ALJ simply found that Plaintiff "did not [meet] both requirements, i.e., the scores '**and**' another impairment with an additional limitation not caused by Payne's intellectual impairment." (Def.'s Br. [Doc. #13] at 15.) Thus, there is no issue that Plaintiff had a qualifying IQ score for purposes of Listing 12.05C. In addition, after separately addressing each of the subparagraphs in Listing 12.05, the ALJ concluded that, "[t]herefore, although there is evidence supporting the onset of [Plaintiff's] impairment prior to age 22, the requirements of listing 12.05 are not met because [Plaintiff] failed to demonstrate deficits in adaptive functioning contemplated by the listing." (Tr. at 19.) Thus, the ALJ found that Plaintiff's impairment manifested prior to age 22. As to the Listing 12.05C analysis, the ALJ did not appear to rely on a separate determination that Plaintiff had failed to demonstrate deficits in adaptive functioning. Instead, the ALJ concluded that the required level of severity was not met because Plaintiff had not established "a physical or other mental impairment imposing an additional and significant work-related limitation of function" as required by the regulations. Therefore, although the parties have discussed at length the question of whether Plaintiff has otherwise established deficits in adaptive functioning, the Court focuses on whether substantial evidence supports the actual determination made by the ALJ: that Plaintiff failed to meet Listing 12.05C because she failed to establish another severe impairment, in addition to the intellectual disability.

7

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00A. The Fourth Circuit has held that "the additional limitation need not be disabling in and of itself. The inquiry is whether the claimant suffers from any additional physical or mental impairment significantly limiting work-related functions. . . . Further, the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities. Luckey v. U. S. Dept. Health & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989) (internal quotations and citations omitted). In the present case, the ALJ determined that Plaintiff's intellectual impairment was her only severe impairment at step two. Thus, the relevant issue in the Listing 12.05C challenge is whether the ALJ erred at step two in concluding that Plaintiff had not established any physical or other mental impairment(s) that was "severe."

At step two, the mere presence of a condition or ailment is not enough to demonstrate the existence of a severe impairment. To qualify as a severe impairment at step two, the impairment must have lasted, or be expected to last, for a continuous period of at least twelve months, 20 C.F.R. § 416.909, and must not be controlled by treatment, such as medication. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986). In this case, at step two, the ALJ explicitly considered Plaintiff's "cyst, back strain, sore throat, affective disorder, anxiety disorder, and intermittent explosive disorder and [found] that these impairments do not have more than a *de minimis* effect on [Plaintiff's] ability to perform basic work activities, and, therefore, are not 'severe' disabling impairments." (Tr. at 15.) He further noted that "[t]here is no objective medical evidence of record to show any significant functional limitations due to these impairments." (Tr. at 15.)

Specifically with regard to Plaintiff's physical complaints, the ALJ explained that Plaintiff's "sore throat was treated on a couple occasions by her primary care physician and was noted to be likely the result of an upper respiratory infection. She was advised to use over-the-counter cold remedies." (Tr. at 15-16.) With respect to the cyst, the ALJ noted that Plaintiff was "seen with a complaint of a pea size bump at the top of her buttock only once[,] and no treatment was recommended. She reported only mild pain (2 out of 10 on a 1 to 10 pain scale) and only to the touch or when she was sitting. The claimant was advised to return to the office if her symptoms worsened. There is no evidence of the claimant returning to her doctor with this problem, suggesting that it has resolved." (Tr. at 16.) Accordingly, as to the sore throat and the cyst, the ALJ concluded that "[t]here is no indication in the record that these . . . conditions are of a chronic nature or that they cause any functional limitations." (Tr. at 16.) [5]

Similarly, the ALJ noted that Plaintiff received sporadic treatment for a back strain, with only two visits in 2010 and then only one visit in 2014. (Tr. at 16.) The ALJ noted that Plaintiff's examinations on these occasions "were essentially normal" and showed normal range of motion, strength, sensation, and reflexes.

> It was noted that [Plaintiff's] back pain was most likely due to the muscle strain and she was recommended stretching and strengthening exercises with application of ice and heat. [Plaintiff] reported that her pain improved with over-the-counter IcyHot. She was not prescribed any pain medication for the

---

[5] With respect to the finding that there is "no indication in the record that these . . . conditions are of a chronic nature," the Court notes that "[t]he Social Security Act, 42 U.S.C. § 423(d)(1)(A), defines 'disability' as the '(1) inability to engage in any substantial activity by reason of (2) any medically determinable physical or mental impairment (3) which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . .'" Totten v. Califano, 624 F.2d 10, 11 (4th Cir. 1980) (citing Yawitz v. Weinberger, 498 F.2d 956 (8th Cir. 1974)).

9

> treatment of her back strain. There is no evidence in the record of any on-going impairment-related treatment or any functional limitation due to [Plaintiff's] back strain.

(Tr. at 16.) Furthermore, at her hearing, Plaintiff alleged no limitations due to physical impairments, either individually or in combination with each other and/or her mental impairments, nor does she suggest any such restrictions in her brief. See Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (noting that through step four, Plaintiff carries the burden of production and proof). In her brief, Plaintiff contends that in the ALJ's decision "there is no discussion or 'logical bridge' from the combined impairments to the ALJ's conclusion that these impairments, even aggregated, did not amount to a severe impairment." (Pl.'s Br. [Doc. #11] at 21.) However, the ALJ analyzed all of the potential physical impairments and found no evidence of any functional limitations at all. Thus, whether considered individually or in the aggregate, there is no basis to conclude that Plaintiff has any severe physical impairments, and the ALJ's decision sufficiently sets out the ALJ's analysis and the basis for the findings in the record.

Moreover, with regard to Plaintiff's alleged additional mental impairments, the ALJ discussed the severity of Plaintiff's affective disorder, anxiety disorder, and intermittent explosive disorder at great length *and in combination*, directly belying Plaintiff's argument. (Tr. at 16-17.) As to these additional alleged mental impairments of affective disorder, anxiety disorder, and intermittent explosive disorder, the ALJ found that "it appears that these conditions are well controlled with medication." (Tr. at 16.) The ALJ noted that Plaintiff began treatment in July 2015, complaining of "depressive mood, anxiety symptoms, and anger

problems." She received individual psychotherapy and medication management, and was prescribed Lamotrigine, which she reported was effective. (Tr. at 16.)

> Office visit notes reflect that the claimant has never been prescribed any medication prior to July 2015. Those records indicate that the claimant had almost immediate positive response to medication. In August 2015, she reported that things were going "very well," that she felt positive effect from her medication, and that she was "doing great." She stated she has been experiencing more stable mood, less anger, and great ability to control her mood. Progress notes reveal that the claimant had significant improvement with medication and that she was "much more engaging, smiling, and spontaneously conversant" during her therapy sessions. She did not have any anger outbursts or behavioral problems. The claimant reported she was looking for a job, studying for driver's test, and thinking of pursuing college to work with animals.
>
> In September 2015, the claimant reported some anger problems when arguing with her sister. Her medication dose was increased and she reported during her next visit in October 2015 that she was doing well and that the increased dose of medication was working "great" for her. She did not report any medication side effects. She continued looking for a job applying to various places. On October 28, 2015, the claimant stated that she experienced good symptom control with medication. The claimant's mental status examinations appear essentially normal throughout the records. She was fully oriented and her attention and concentration were normal. Her language, speech, memory, and psychomotor behaviors were stable. The claimant reported normal energy and denied any suicidal or homicidal ideation. Her mood was euthymic with appropriate effect.

(Tr. at 16-17, 747, 750, 757, 758, 760, 762, 764, 766.) At the hearing before the ALJ, Plaintiff testified that she takes medications for her "anger issues and bipolar disorder," that the medications are helpful, and that she would be able to do her prior job at the animal hospital full time if work were currently available. (Tr. at 20, 45-46, 52). Based on the evidence set out above, the ALJ ultimately concluded that Plaintiff's affective disorder, anxiety disorder, and intermittent explosive disorder were well controlled with medication and are not severe impairments. See also Ely v. Colvin, 1:12CV75, 2014 WL 2967913 (M.D.N.C. July 1, 2014)

11

(noting that if a symptom can be reasonably controlled by medication or treatment, it is not disabling, and "[c]onsistent with that principle, courts will affirm an ALJ's finding that a condition does not qualify as severe where (as here) the record shows medicinal relief."). The ALJ set out the basis for the determination and the supporting evidence in the record, providing a "logical bridge" for the determination. Substantial evidence supports the ALJ's finding that none of Plaintiff's additional impairments, individually or in combination, are severe impairments. Accordingly, substantial evidence also supports the ALJ's step three determination predicated on this finding, concluding that none of Plaintiff's physical or additional mental impairments significantly limited her ability to do basic work activities, and that Plaintiff therefore failed to satisfy Listing 12.05C.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Judgment on the Pleadings [Doc. #10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 1st day of February, 2018.

                                                /s/ Joi Elizabeth Peake
                                                United States Magistrate Judge